Next case is 2009-1492. WNS Holdings v. United Parcel Service Mr. Cadell, whenever you're ready. Yes, Your Honor. Good morning. May it please the Court. Good morning. First, I'd like to focus on the 366 patent and then discuss the 194. The trial court construed the 366 patent, the critical language, as coordinating the timing and manner of the transmission of evasive maneuver so that the transmission can occur without interfering with other transmissions. I'd like to focus the Court's attention on what we view as surplusage or additional language added by the trial court to the construction that we think is without basis, and that would be, first, the words, and manner, and then, second, the without interfering with other transmissions. First, as to and manner, if you read the hearing transcript at Joint Appendix 974, you will see that the Court asked, and then you also say, and manner of transmission. UPS replied, yes, because merely coordinating timing, if you're using two different systems, won't solve the problem. You have to be sort of operating under the same set of rules, and we think manner is a helpful addition. Is that critical? I'm not sure that word, and manner, is critical to where the parties were, and it goes on. Later, there's a discussion that and manner is required, and it's likened to individuals driving on the street, and it's not enough to have a red light, green light. You have to have, whether you're on the left-hand side or the right-hand side. I submit that is nonsense. If you coordinate timing, then nobody is on the street when you're on the street, and it doesn't matter, you can be on the left side, you can be on the right side, you can drive down the middle of the road. If timing is coordinated, that's all that's required, and manner adds nothing. It's nowhere in the patent. It's nowhere in the specifications. It, I think, was added inappropriately. The second language, without interfering with other transmissions. If you read at Joint Appendix 5464, Professor Mandiam, the only qualified wireless communications expert offered by either side, what he says, and it makes sense, it's very clear, it is impossible to have wireless communications without some interference. That's why I couldn't have my BlackBerry up here and have it on, because it would interfere with this microphone. It's why you have to turn off your cell phone when you're on an airplane. Wireless communications, it's not just because you're on the same wavelength, wireless communications necessarily interfere with one another. So by adding the language without interfering, it makes it, the invention, not only, it makes it impossible. There is no such thing as a wireless communication without interference. Well, isn't there, in the real world at least, two kinds of interference? There's the technical kind of interference that you're just describing, just as the voices interfere with each other in discussion, but there's also interference that matters. That is, interference that actually precludes understanding. I thought that the judge viewed it as the latter type of interference, not the spectrum interference that you're describing. Then I suggest, Your Honor, that without interfering with other transmissions adds nothing to the construction, because if you look at the construction that we would propose, coordinating the timing of the transmission of evasive maneuver so that the transmission can occur. If you stop it there, then you've accomplished your point, which is you accomplished the transmission. No, but the transmission can occur doesn't obtain the result any more than if I were speaking to you and we had loud music going on. I could still speak to you, I could make my transmission, but it would be interfered with by the external environment and you'd never hear it. My understanding of what the trial judge was reaching for was we need a transmission that can be, in the normal course, understood. What's wrong with that idea? This invention, as phrased, Your Honor, I don't think there's anything wrong with that idea, and I think TCAS accomplishes that. If I might, I'd like to turn to the discussion of TCAS. We were criticized, or I think UPS mischaracterizes, the discussion of TCAS in the 366. If you look at Joint Appendix 171, Columns 5 and 6, those are characterized by UPS as two pages devoted to describing problems with asynchronous polling of TCAS. That is flatly not true. First, there's one page that is simply descriptive of TCAS, the system itself. Asynchronous polling is mentioned only once as a part of the TCAS system. Second, there is less than one page devoted to describing four disadvantages to TCAS. Now, three of those disadvantages are addressed by the invention at issue. The invention at issue basically combines GPS with an existing, with TCAS. And the three disadvantages addressed by the invention are false alarms. The patented system has the effect of making sure that people don't broadcast on the same frequency at the same time, correct? Because, yes, it uses TCAS. And the accused system doesn't do that, right? Judge, let me see. I'm not sure I understood your question. The patented system is designed to create a situation in which the aircraft are not broadcasting on the same frequency at the same time, right? In some claims, that is true. For example, in Claim 3, that is true. That is not the case in Claim 1. But the accused system does not do that. If we were to construe the claims the way I described their scope, the accused system would not infringe, right? The accused system, I think, does do that, Your Honor. It does do that? How does it do that? Yes. And let me explain. Let me explain. And let me go back to TCAS because it involves an understanding of TCAS. First, as I said, there are four disadvantages to TCAS. And let me cut to something that I think directly answers your question. If you look at Joint Appendix 3987 and 3988 and Joint Appendix 4184, you will see this is the TCAS standard. These are the minimum performance standards for TCAS. And as you can see, Your Honor, it's titled Coordination with Other Aircraft. It says, For the Proper Functioning of the Air-Air Resolution Advisory Coordination Tasks. The next heading is TCAS Coordination Interrogations. It states Coordination Interrogations, Attempts to Coordinate, Coordination Reply, the Coordination Reply Message, a Coordination Reply Message, et cetera. The point is, Your Honor, I mean, isn't it the answer to my question that the accused system does not prevent aircraft from broadcasting at the same time on the same frequency? What it does is to have repeated sendings with the idea that, you know, some of them will get through. Yes, sir. And it is not just that some of them will get through, Your Honor. It is a virtual certainty that some of them will get through. Sure. But some of them will not because they'll be at the same time on the same frequency as another aircraft. And, Your Honor, that – Yes. Yes. Yes. And, Your Honor, I think the point is, the point that I was making in response to Judge Plature, if the court, by grafting on without interfering with other transmissions, if the court means an absolute perfect coordination so that there is never any interference, then we do not meet that standard. That is not the pattern. Well, what I understood him to be saying is under the patented system, as he construed it, what it creates is a situation in which there's coordination so that the same aircraft are not at the same time broadcasting on the same frequency. And, Your Honor, I think that is accomplished by TCAS. That's what I was just talking about. Coordination, it can be done in different ways. There are – there is one way that's identified, the TDMA or TMDA, is identified in the patent, but it's specifically there are other ways to do it. And I want to be clear, this is not a SIMED or a Honeywell case where there's a disavowal of TCAS. In fact, this patent speaks very clearly that it wishes to be, and if you look at – Well, doesn't the patent say that the TRAC system is asynchronous? The TAS system, TCAS system, is asynchronous. An asynchronous system can be synchronized. Let me repeat that. You can have an asynchronous – you can synchronize an asynchronous transmission. What's that mean? It means that it can be coordinated so that it communicates. That's the point. At the same time. And TCAS works. I'm sorry, Your Honor. At the same time. At the same time. That is the purpose of jittering. There's never any criticism in the patent of jittering. In fact, jittering works. It accomplishes TCAS. If it didn't work, none of us would – there would be a problem with getting on airplanes. The reason – It's not a question of whether it works or not. Obviously, both of the systems work. The question is whether the patented system is used in the infringing system. There could be different ways of doing it. What the district court said is that the patented way of doing it is to coordinate things so you don't have the same aircraft broadcasting on the same frequency at the same time. I come back to the fact that it seems as though the accused system doesn't do that. So if the claim construction is right, it seems to me you probably lose. And, Your Honor, I submit two things. One, the claim construction is not right. And, two, the accused system does do that. And what I've just pointed to in the joint appendix, the minimum performance standards, uses that very terminology, coordination. TCAS works not because – it works because it does coordinate. It manages to make communications that get through because it varies the time, it varies the frequency, and it communicates. That is a form of coordination. It may not be as elegant as TDMA, but it is effective and it is coordination. And what this patent said was it did not disavow. It sounds as though you're saying the patent covers any system for communication as long as it works. As long as it works, I think that's right, Your Honor, because the purpose of the patent, the focus of the patent was to incorporate GPS into an automatic collision avoidance system. And, in fact, if you look at the patent itself, detailed JA172, if you look at the summary of invention, there are seven purposes set out. Not one of those, not one purpose set out in the summary of invention, JA172, proposes a new means of communication between aircraft. It is intended to use existing means of communication. In fact, far from disavowing TCAS, the 366 repeatedly characterizes the invention as an improved collision avoidance system and even goes so far as to say one of its objects is to provide an improved automatic collision avoidance system based on GPS that is backward compatible. This is in the patent, that is backward compatible with existing collision avoidance systems. That clearly includes TCAS, and therefore we believe the trial court erred and imported basically a limitation in Claim 3, clearly says synchronized transmission so as to prevent simultaneous transmissions. This is a cargo tech and turbo kit. You're deep in your rebuttal time. Do you want to save your rebuttal time? Yes, Your Honor. Thank you very much. Thank you. Mr. Flynn. Good morning, Your Honors. May it please the Court, my name is Patrick Flynn and I'm the attorney for the Defendant in the Appellee United Parcel Service. I want to briefly mention the 366 and then talk a little bit about the 194. The issue I submit to the Court about the 366 is not quibbling with what the district court did in what I thought was a valiant effort to try to construe the term synchronize. The issue is, is there any construction, not forgetting for a moment the construction they proposed, is there any construction that would apply the word synchronous in the claim to a technology the patent itself says is asynchronous? And I submit there isn't. Certainly the construction they argued below, determining the timing, stopping there, with no reference to any other actor or any external signal or actor in the process, is not anything resembling synchronous. This Court synchronizes its oral arguments by scheduling where the judges are going to be at what particular time. If the judges determined their own timing individually and wandered from courtroom to courtroom, as the lawyers wandered from courtroom to courtroom, hoping at some point to hear the argument they were intending to hear, no one in the right world would call that synchronous. But they might call it good decision-making. It might improve on things, Your Honor. I would agree with that. Or asynchronous, right? There is a difference between a ballet and a mosh pit, and the patent makes that distinction. And we submit here that there's no dispute that the transmission they're accusing of being synchronous is the exact same TCAS transmission described in the patent. And the other point I would make about coordination, the coordination being talked about is not coordinating the transmission. It's coordinating the maneuvers on the hope that the radio signals make it through. Let me turn now to the 194 patent, and I'll try to be quick about that, because my focus there is also regarding, in the first instance, the claim language. Because I think the briefs have something of a disconnect on this issue. The briefs, particularly the appellant's briefs, focus on the words, to report the status and location. That's not the element that's at issue. The element at issue reads a communicator operatively connected to the controller for communicating a signal to the air traffic control center to report the status and location of the aircraft in response to the switch. That's the penultimate element of the asserted Claim 7, the last element of Claim 1. Now, what's significant about that is the active verb in that clause is communicating. To report is in the infinitive verb. And as we know, in ordinary English language usage, if you said, he wants to become king, the active verb in there is wanting. He's not becoming king. He simply wants to become king. And then if you add to the phrase, Macbeth wants to become king in response to his wife's request, his wanting to become king is what's responsive to the request, not becoming king. He becomes king by murdering a fair number of people. All right. After this lesson in Shakespeare, how do you tie it to your king? The communicator communicates in response to the switch. That's what the plain language says. And when the briefs fail to mention the communicator communicating, they lose track of what the switch is actually doing and what is responding to the switch. What is responding to the switch? What happens is one of three switches in the specification is triggered. And until that time, there is no communication of status and location. Any one of the three? Any one of the three. You have the emergency switch. You have the crash switch. And you have the weight on wheel switch. Now, in our claim, it's only the weight on wheel switch because Claim 7 makes specific that the switch we're talking about is the landing gear weight on wheel switch. And it is clear the patent claim itself says that status and location is communicated in response to the switch. There's two other aspects of the claim language that are significant before we even get to what the specification tells us. The first aspect of the claim language is status and location are used together right before in response. There is no suggestion in their opening brief or in their reply brief as how location is somehow changed in response to the switch. That switch is only a weight on wheel switch. The other language of the patent says that the communicator gets its data on location from the receiver that it's coupled to. Isn't the weight on wheel switch automatic once the plane is off the ground? That's correct. When it goes off the ground and when it lands. So you don't really need to have someone push that switch. It's automatic. That's correct. The patent does talk about two automatic switches, the weight on wheels and the crash switch, and one pilot activated switch. But they're both switches that then are coupled to the communicator. But that only gives the communicator status. The communicator has to get the location from something else. And what the plaintiffs have never done is explain how if in response to, the switch simply means changing the content. It changes the content of status, I'll submit, but it does not change the content of location. And therefore, the in response to can't be changing the content of the report. The in response to has to go all the way back to communicating just as Macbeth wants to be king. So you're saying it's communicating location in response to the sensor. That's exactly right. And not changing the content of the message, which is their theory. Does the emphasis you're placing on this when you're opposing counsel didn't discuss this issue indicate some concern on your part? No. I think that's a very difficult argument for them to make. They're very good lawyers and they work as hard as they can. In their opening brief, they carefully phrased it as changing the content of the ADSB message. But, of course, the claim language doesn't say ADSB message. They didn't bother to discuss it. And you're spending most of your time on it. Does that indicate to us concern? No, it doesn't at all, Your Honor. I think that what I wanted to focus on was. Is that a hard issue? It's not a hard issue. I think that the claim language itself directs you to the answer before you even get to the specification. You're saying that if we recognize the communication in response to the switch issue, the case is over. It is. And you don't even have to look at the specification. So your answer to Judge Dyke might be, I don't know why they didn't talk about it except that they can't. That's exactly right, Your Honor. Well, the case isn't over. We've got two different claims here. No, it's over with respect to the 195. With the 366, that's synchronized. And we've mentioned that. I want to talk for a minute about the question of being up here on summary judgment and the question is whether there, even with all of this, are there any genuine issues of fact left in dispute? There aren't and there can't be. And if you look at the briefs carefully, what is tempted to be a manufactured issue of fact isn't. There's no dispute with regard to these two critical facts. What causes how that ADSB message is sent in the 366 patent and whether they're accusing TCAS in the 194 and then whether they're accusing TCAS in the 366. What the underlying UPS claims do is undisputed. Now, they argue in their brief that with respect to the 366, a triable issue of fact was created when their expert, in essence, says, yes, I agree TCAS is asynchronous, but it nonetheless meets the court's definition of synchronous, which is a quibbling with words. It does not create a triable issue of fact as to what the actual system does. It is an expert characterizing a claim construction, which is itself a question of law, not a question of fact. The issue is entirely one of, is there a claim construction for either one of these two that is proper, that was advocated below, that could read on the undisputed technology? And we submit for both of these patents there is not. Unless there are further questions, I'll be happy to sit down. Thank you, Mr. Flynn. I don't suppose I could take some of his time. Brevity is a virtue. First, Your Honor, I did not fail to address the 194. I just didn't get to it. But let me finish with the 366 very quickly. Carlin Tech and TurboCare teach that you cannot import a limitation from a dependent claim into the independent claim from which it depends. If you look at Claim 3 of the 366, it goes the one step further. It goes the step that the trial court went. It says, Synchronized transmission so as to prevent simultaneous transmissions. That language, so as to prevent simultaneous transmissions, is not in Claim 1. And that is why our proposed claim construction is correct. But synchronization is in Claim 1. Synchronization is, Your Honor. And synchronized is accomplished through the synchronized simply means to coordinate timing so that you can communicate. And TCAS does that. It does it well. It accomplishes communication. And what we have proposed in the patent, what the patent does is it brings in GPS to solve the other disadvantages with TCAS. It provides better positioning. It provides a display panel. Now, let me very quickly get to the 194. I've got 30 seconds. What UPS misses and what the trial court misses is the relationship in Claim 1 between the third element, sensing the status, sensing the switch, and in response to the switch. Again, if you look at Claim 4 of the 194, Claim 4 says the switch to signal the controller to initiate communications. Had the inventor wanted that language in Claim 1, he would have done so. Again, it's Carlin Tech. It's TurboCare. You cannot import that limitation into Claim 1. Claim 1 is a relationship between sensing the switch and reporting it. It does not require action on the part of the switch to initiate that. That's the nature of sensing it and reporting. Thank you, Your Honor. Thank you, Mr. Condola. The case is submitted.